

U.S. Department of Justice

United States Attorney
Eastern District of New York

RTP/MWG  
F. #2021R00179

271 Cadman Plaza East  
Brooklyn, New York 11201

February 17, 2022

By E-Mail

The Honorable Sanket J. Bulsara  
United States Magistrate Judge  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, NY 11201

      Re:   United States v. Romean Brown, et al.  
            Docket No. 22-MJ-169

Dear Judge Bulsara:

      The government writes in advance of the arraignments of defendants Tyrek Clarke, Kennith Desir, Stephan Dorminvil, Keith James, Christopher Jean Pierre, Oneal Marks, Roleeke Smith and Christopher Topey, who were arrested earlier this morning in the above-referenced case, to set forth the government's position regarding detention and bail as to each defendant.

I.     Background

      As set forth in the Complaint and Affidavit in Support of Arrest Warrant ("Complaint"), probable cause exists to believe that between March 2020 and October 2021, the defendants,[1] together with others, committed the following crimes: (a) conspiracy to commit access device fraud, in violation of 18 U.S.C. § 1029(b)(2); and (b) aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). Specifically, the defendants submitted and caused to be submitted nearly 1,000 fraudulent claims to the New York State Department of Labor ("NYS-DOL") unemployment benefits using the personal identifying information, including names, dates of birth, and Social Security numbers, of real individuals. The scheme resulted in an actual loss of approximately $4,339,475.90 and an intended loss of approximately $20,992,365.00, which includes additional claims filed by the defendants and their co-conspirators that were blocked as fraudulent. According to

---

[1]     Romean Brown was arrested earlier this morning in California and will appear in the Central District of California. Kai Heyward was arrested earlier this morning in Delaware and will appear in the District of Delaware. Jahriah Olivierre remains at large.

information from the NYS-DOL, fraudulent unemployment insurance claims connected to the defendants' fraudulent scheme have been certified as recently as October 2021.

II. Legal Standard and Procedure

Under the Bail Reform Act, Title 18, United States Code, Sections 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is a risk of flight. 18 U.S.C. § 3142(e) (detention warranted "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). Risk of flight can be proven by a preponderance of the evidence. United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

The Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g).

Evidentiary rules do not apply at detention hearings, and the government is entitled to present evidence by way of proffer or hearsay. See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000). In the pre-trial context, few detention hearings involve live testimony or cross-examination. Most proceed on proffers. Id. at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or even for discovery." Id. (internal quotation marks omitted). Indeed, the Second Circuit has reversed district courts where they have not credited the government's proffer, including proffers with respect to a defendant's dangerousness. See, e.g., United States v. Mercedes, 254 F.3d 433, 437 ("Roman has twice been convicted of weapon possession – one felony conviction, and one misdemeanor conviction. We find the district court committed clear error in failing to credit the government's proffer with respect to Roman's dangerousness.").

III. Discussion

The factors to be considered in the detention analysis, as set forth in Section 3142(g), show that each defendant presents a serious risk of flight if he were to be released.

A. Nature and Circumstances of the Offense Charged and the Overwhelming Evidence of the Defendants' Guilt

Access device fraud and aggravated identify theft are serious crimes of fraud and deception. The crux of the charged crimes is the repeated use of the stolen identities of others, and the defendants' access to and brazen use of stolen identities weighs in favor of their being a flight risk. See United States v. El-Hage, 213 F.3d 74, 80 (2d Cir. 2000) (holding that charges centering around false documentation, including "apparent access to

2

false documents" supports a finding that a defendant poses a risk of flight"). In addition, the defendants obtained millions of dollars in insurance benefits, much of which they withdraw from ATMs in cash; the defendants' access to significant amounts of cash is also a significant factor in their being a flight risk.

The defendants face very lengthy periods of incarceration if convicted of the charged crimes. The government presently estimates that each defendant, if convicted of the access device fraud conspiracy, will face an advisory Guidelines range of imprisonment of at least 121 to 151 months.[2] In addition, if convicted of the aggravated identify theft charge, each defendant faces a mandatory sentence of two years of imprisonment, which must be imposed consecutively to the sentence imposed on the access device fraud count. Accordingly, the government estimates that each defendant faces an advisory Guidelines range of imprisonment of at least 145 to 176 months of imprisonment. The significant periods of incarceration that the defendants may receive, including a mandatory two-year minimum term, is strong incentive for the defendants to flee and favors detention.

B.  The Weight of the Evidence Against Each Defendant is Overwhelming

The weight of the evidence again each defendant is overwhelming. As set forth in the Complaint, the government has compiled substantial evidence linking each defendant to the charged crimes, including Telegram messages between the defendants (and others) discussing the purchase of stolen identities and filing of fraudulent claims in the names of their victims; IP, email and telephone records, and residential addresses used by the defendants to file claims and obtain benefits; photographs of the defendants at ATMs withdrawing the fraudulently-obtained funds; and social media postings of several of the defendants with significant sums of cash.

In addition, during searches of residences conducted this morning pursuant to judicially-authorized search warrants, agents recovered, among other items, evidence of

---

[2]  In estimating the Guidelines range for this offense, the government calculated a total adjusted offense level of 32, which is premised on a base offense level of 6, pursuant to U.S.S.G. § 2B1.1(a)(2), and several enhancements, including: (1) a 20-level enhancement, pursuant to U.S.S.G. § 2B1.1(b)(1)(K), for causing an intended loss amount of approximately $21 million; (2) a 2-level enhancement, pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(1), because the offense involved more than 800 different stolen identities in whose names the fraudulent claims were made; (3) a 2-level enhancement, pursuant to U.S.S.G. § 2B1.1(b)(10)(C), because the offense involved sophisticated means; and (4) a 2-level enhancement, pursuant to U.S.S.G. § 2B1.1(b)(11), because the offense involved an authentication feature.

For simplicity purposes, the government's estimate assumes that each defendant falls in Criminal History Category I. The advisory range of imprisonment may be higher in the event a defendant has a prior criminal conviction or committed the charged offenses while on pre-trial supervision or parole.

3

ongoing fraudulent conduct by several of the defendants as well as their access to significant amounts of cash, including the following:

- From defendant James's residence, agents recovered approximately $2,000 in cash; a driver license in another individual's name; several debit cards in the names of other individuals; and handwritten receipts for 3 cash purchases each more than $5,000, including a receipt in the amount of $7,000 for a BMW.

- From defendant Smith's residence, agents recovered $4,100 in cash; debit cards in the names of other individuals; and mailings sent by the NYS-DOL addressed to another individual.

- From defendant Dorminivil's residence, agents recovered 3 debit cards in the names of other individuals and mailings sent by the NYS-DOL and the New Jersey Department of Labor addressed to other individuals.

- From defendant Topey's residence, agents recovered a driver license in another individual's name;

- From defendant Desir's residence, agents recovered at least 6 mailings from the NYS-DOL addressed to other individuals and a debit card in the name of another individual; and

- From Jean Pierre's residence, agents recovered an identification card not in his name and debit cards in the names of other individuals.

4

IV.	Conclusion

        For the reasons set forth above, the government submits that each defendant is a serious flight risk and seeks either detention or release on a secured bond signed by financially-responsible sureties as to each defendant.

        Respectfully submitted,

        BREON PEACE
        United States Attorney

By:  /s/_____
      Michael W. Gibaldi
      Robert Polemeni
      Assistant U.S. Attorneys
      (718) 254-6067/6044

cc:	Clerk of the Court (by email)